STATE OF WEST VIRGINIA

*v.*

ROSCOE WAYNE BLANEY

(No. 15156)

Decided December 11, 1981.

---

*Edwin C. Runner* for appellant.

*Chauncey H. Browning,* Attorney General, *and William F. Carroll,* Deputy Attorney General, for appellee.

PER CURIAM:

This is an appeal by Roscoe Blaney from his conviction of driving under the influence of alcohol in violation of *W. Va. Code,* 17C-5-2(a) [1976]. Following his jury trial in the Circuit Court of Preston County the appellant was sentenced to twenty-four hours in jail and his driver's license was suspended for the statutorily mandated six months.

The principal issue on this appeal is whether the blood alcohol test administered to appellant on the day of his arrest was properly admitted into evidence against him at trial. First, the appellant asserts that the blood test was inadmissible because he was not advised of his *Miranda* rights and informed of the provisions of the West Virginia Implied Consent Law, *W. Va. Code,* 17C-5A-1 *et seq.* [1972]. The appellant also argues that the trial court erred in admitting the test results into evidence when the State failed to show that the state police chemist had followed the approved procedures for admission of such evidence.

I.

We find appellant's first argument to be without merit. The record indicates that before the blood test was administered the appellant signed a consent form. That consent, which was admitted into evidence and read to the jury during the trial, shows that appellant was advised of his right to counsel before making any statement or before

giving his consent for the blood alcohol test and was advised that he was not required to make any statement, submit to any chemical test, or incriminate himself in any manner. The form also indicates that appellant waived those rights by signing the consent form.

We find the appellant's reliance on *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966) to be misplaced. *Miranda* principles come into play only when there is a privilege against self-incrimination guaranteed by the Fifth Amendment to the U. S. Constitution. This privilege applies in the case where there is custodial interrogation of an accused, *see, State v. Rissler,* ____ W. Va. ____, 270 S E.2d 778 (1980), but we have never found it applicable where the evidence obtained from the accused is not of a testimonial or communicative nature. *See, Schmerber v. California,* 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed.2d 908 (1966) where the contention that forced withdrawal of blood violated the Fifth Amendment was rejected.

In this case the appellant was not forced to submit to the blood test, he requested it. And there are no allegations that appellant made any statement to the police officers inculpatory or otherwise. Thus we do not have a situation where the admissibility of the blood test depends upon "Miranda rights". Even if we were to find that *Miranda* was appplicable in this situation, the evidence shows that the State carried its burden of proving a waiver of those rights. That standard of proof was enunciated in Syllabus Point 2 of *State v. Rissler, supra*:

> "In the trial of a criminal case, the State must prove, at least by a preponderance of the evidence, that a person under custodial interrogation has waived the right to remain silent and the right to have counsel present."

Here we have more evidence than is needed to meet the *Rissler* standard which does not require an explicit waiver but can be satisfied by inferences drawn from the words and actions of the person being interrogated. 270 S.E.2d at 781. Having no allegations or evidence before us that the consent form was forged, that the appellant was illiterate

and did not know what he was signing, or that the consent was involuntarily given, we find no error on this issue.

The appellant also contends that he should have been informed of the provisions of the Implied Consent Law. *W. Va. Code*, 17C-5A-1 [1972] states in part:

> "Any person who drives a motor vehicle upon the public streets or highways of this State shall be deemed to have given his consent by the operation thereof, subject to the provisions of this article, to a chemical test of either his blood, breath or urine for the purpose of determining the alcoholic content of his blood whenever he shall be lawfully arrested by a law-enforcement officer as hereinafter defined for the offense of driving a motor vehicle upon the public streets or highways of this State while under the influence of intoxicating liquor. . . Provided, that if the test so designated is a blood test and the person so arrested refuses to submit to such blood test, then the law-enforcement officer making such arrest shall designate in lieu thereof, either a breath or urine test be administered, and notwithstanding the provisions of section three . . . of this article, such refusal to submit to a blood test only shall not result in the suspension of the arrested person's operator's or chauffeur's license. . . . The person arrested shall be told that his refusal to submit to the test finally designated as provided in this section, will result in the suspension of his operator's or chauffeur's license . . . for a period of six months."

The statute clearly provides that the arresting officers are required to inform the arrested individual of the consequences of his refusal to submit to a test only where there has been such a refusal. In this case the evidence shows that when the officer asked the appellant to submit to the breathalyzer test, he did not refuse. Instead, he requested that he be given a blood test and the officers complied with this request as was proper under *W. Va. Code*, 17C-5A-6 which states that any person arrested for driving under the influence who is not tested at the

direction of the arresting officer has the right to demand that "a sample or specimen of his blood, breath or urine be taken within two hours from and after the time of arrest, and that a chemical test thereof be made." Hence we find this assignment of error without merit.

## II.

The appellant also objects to the admissibility of the results of the blood alcohol test because the state police chemist did not follow certain prescribed procedures for conducting the test. Specifically, the appellant complains because no anti-coagulant was added to the blood sample to forstall blood clotting as required under Section 3.02(e) of West Virginia Board of Health Regulations Governing the Methods and Standards Relating to Chemical Test for Blood Alcohol Implied Consent Law.[1] When the test was performed by the chemist, the sample contained a clot in addition to the fluid. The chemist testified that he found that the sample contained .24% alcohol when he tested the liquid surrounding the clot. Then on cross-examination he testified that even if the anti-coagulant had been added to the sample, the results would still have been approximately .20% or twice the percentage of alcohol needed to establish *prima facie* intoxication.[2]

According to the expert testimony the lack of an anti-coagulant did not destroy the validity of the blood alcohol test in this instance. In addition, there was substantial other evidence from which the jury could have found that the appellant was guilty. Both officers testified that when they stopped the appellant he was swerving from one side of the road to the other and at one point ran completely off the road; that at the time of his arrest the appellant's walk was staggered, his eyes were glossy, and his speech was slurred; and that there was an odor of alcohol about him. Also, the medical technician who drew appellant's

---

[1] *W. Va. Code*, 17C-5A-5 [1968] provides that a blood test given to an arrested person "must be performed in accordance with methods and standards approved by the state department of health."

[2] A blood alcohol content of .10% serves as prima facie evidence of intoxication for purposes of drunk driving under *W. Va. Code*, 17C-5A-5(c) [1968].

blood testified that she smelled alcohol on appellant's breath and that he was staggering.

The purpose of the requirements for admission of the results of any scientific test[3] is to protect defendants in drunk driving cases from inaccurate test results. *See, State v. Keeton,* _____ W. Va. _____, 272 S.E.2d 817 (1980). This purpose was served in this instance since the state police chemist was questioned about the possible difference in the test results had an anti-coagulant be used. The jury was entitled to believe his expert opinion and evidently did so when they considered his testimony coupled with the other evidence of intoxication. Under these circumstances, we conclude that it was harmless error to admit the results of the test even though no anti-coagulant was used. The general rule in this State is that "[a] verdict of guilty in a criminal case will not be reversed by this Court because of error committed by the trial court, unless the error is prejudicial to the accused." Syl. pt. 5, *State v. Davis,* 153 W. Va. 742, 172 S.E.2d 569 (1970).

Appellant assigns numerous other grounds for reversal of his conviction. We have carefully examined each of them and find no error.[4]

Accordingly, the judgment of the Circuit Court of Preston County is affirmed.

*Affirmed.*

---

[3] Under *State v. Hood,* 155 W. Va. 337, 184 S.E.2d 334 (1971) the necessary foundation which must be laid before the admission of test results is: (1) that the testing device or equipment must be in proper working order; (2) that the person giving and interpreting the test was properly qualified; (3) that the test was properly conducted; and, (4) that there was compliance with any statutory requirements.

[4] The assigned errors include: failure to show chain of custody of the blood sample; failure to direct a verdict for appellant; allowing police officers to offer expert testimony about appellant's sobriety; allowing a lay witness to give an opinion; improper instructions; failure of the court to declare a mistrial; and cumulative error.