376 S.E.2d 174

**STATE of West Virginia, Appellee,**

v.

**Thomas B. SHUGARS, Appellant.**

No. 17987.

Supreme Court of Appeals of
West Virginia.

Dec. 21, 1988.

Clement D. Carter, Steptoe & Johnson, Clarksburg, for appellant.

Charles G. Brown, III, Atty. Gen., for appellee.

## PER CURIAM:

Thomas B. Shugars appeals his conviction in the Circuit Court of Harrison County for driving under the influence of alcohol with reckless disregard for the safety of others, causing a death, and two counts of driving under the influence causing bodily injury. He assigns as error that the court admitted into evidence a blood sample not taken incident to a lawful arrest and evidence that was irrelevant, cumulative, and unfairly prejudicial. He further asserts that the State's nondisclosure of scientific tests performed by its accident reconstruction expert was a surprise on a material issue which hampered the preparation of his case. We find no error and affirm the trial court.

On August 30, 1985, on U.S. Route 19 at the Shinnston, West Virginia city limits, a pick-up truck collided with a Buick Skylark automobile. The Buick's driver, Nida L. Ganoe, died of injuries at the scene of the accident. The two automobile passengers and Mr. Shugars, the pick-up truck's driver, were injured and transported to a hospital for medical treatment.

Trooper B.B. Flanagan, Jr., arrived at the accident scene, observed the victims being treated by emergency medical technicians, and proceeded to make an accident scene drawing. He noticed in Mr. Shugars' pick-up truck an open, half-filled bottle of Wild Irish Rose wine beneath the front seat on the driver's side and smelled the odor of an alcoholic beverage on the defendant's breath. Within two hours of the accident, Trooper Flanagan spoke with Mr. Shugars at the hospital, told him that the wine bottle had been found, and charged him with driving under the influence of alcohol. The trooper then asked Mr. Shugars for a blood sample to perform a blood alcohol analysis. Mr. Shugars signed a voluntary consent to draw blood and the test was performed. The blood specimen contained .17 percent blood alcohol by weight.

The next day, the trooper obtained a warrant from a magistrate. On September 1, 1985, after advising Mr. Shugars of his rights, the trooper took his written statement in which he stated that on the day of the accident, he had begun drinking at about 11:00 a.m., drank off and on until about 6:00 p.m., but knew what he was doing. He believed the accident occurred when headlights from an oncoming car blinded him, causing him to cross the centerline and hit the Buick. He again stated that he had voluntarily given the blood sample.

At the conclusion of a five-day trial held in November, 1986, Mr. Shugars was found guilty of felony driving under the influence of alcohol resulting in death and two misdemeanor charges of driving under the influence resulting in bodily injury.

■ The primary issue is whether the results of the blood alcohol content test were improperly admitted because the test was not performed incidental to a lawful

arrest.[1] Mr. Shugars contends that no citation was issued and that his actual arrest did not occur until four days after the test was administered. In *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976), we first discussed the requirements of a lawful warrantless arrest of a person charged with a violation of W.Va.Code, 17C–1–1, *et seq.*, and in Syllabus Point 1 stated:

"Under the provisions of W.Va.Code, 17C–5A–1, *as amended*, a law-enforcement officer may arrest a person and a test for blood alcohol may be administered incident thereto at the direction of the arresting officer who has reasonable grounds to believe the person to have been driving a motor vehicle upon a public highway while under the influence of intoxicating liquor."

The defendant in *Byers* was charged with driving a motor vehicle upon a public highway while under the influence of intoxicating liquor, a misdemeanor offense. W.Va.Code, 17C–19–3 (1984), requires that a person charged with an offense under Chapter 17C of the West Virginia Code which is punishable as a misdemeanor "shall be immediately taken before a magistrate or court within the county in which the offense charged is alleged to have been committed." We envisioned circumstances arising in the context of accidents caused by drivers under the influence of an intoxicating liquor which would delay appearance before a magistrate. In Syllabus Point 5 of *Byers*, we explained:

"Good cause, excusing noncompliance with W.Va.Code, 17C–19–3, *as amended*, and justifying implementation of the arrest procedures set forth in W.Va.Code, 17C–19–4, *as amended*, includes such reasons as a justice not being readily available or injuries to the offender

which require immediate medical attention or hospitalization."

In these circumstances, when a misdemeanor offense occurs and a defendant is not able to immediately appear before a magistrate, the arresting officer may issue a citation.

Subsequent to our holding in *Byers*, the legislature enacted W.Va.Code, 17C–5–2, which makes the offense of driving under the influence of intoxicating liquor which results in a death, a felony under certain circumstances. In *State v. Franklin*, 174 W.Va. 469, 327 S.E.2d 449 (1985), the defendant driver of a motor vehicle that was involved in a deadly accident was transported to a hospital where he was interviewed by a State trooper who had not witnessed the accident. The trooper testified that the defendant exhibited symptoms of inebriation including flushed skin, mumbled and slurred speech, and being "mush mouthed." The trooper also detected a "moderate" odor of alcohol on the defendant's breath. The trooper read the defendant his rights and obtained his signature on a consent form to permit a blood alcohol test. To resolve the threshold question, whether the trooper had sufficient grounds to place the defendant under the arrest, we referred to *Byers* commenting:

"*Byers*, distinctly envisioned the situation presented by this case where the drunk driver cannot be arrested at the scene of the crime because he has been rushed to the hospital for emergency medical care. We thus hold that since the offense of driving under the influence of alcohol resulting in death under *W.Va.Code*, 17C–5–2 (1981) may be, depending on the circumstances, either a felony or misdemeanor, a lawful warrantless arrest may be made, upon reasonable suspicion of probable cause, at a

---

**1.** W.Va.Code, 17C–5–4 (1983), reads, in pertinent part:

"Any person who drives a motor vehicle in this State shall be deemed to have given his consent by the operation thereof, subject to the provisions of this article, to a preliminary breath analysis and a secondary chemical test of either his blood, breath or urine for the purposes of determining the alcoholic content of his blood.... A secondary test of blood,

breath or urine shall be incidental to a lawful arrest and shall be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have committed an offense prohibited by section two [§ 17C–5–2] of this article or by an ordinance of a municipality of this State which has the same elements as an offense described in said section two [§ 17C–5–2] of this article."

hospital by an officer before whom the offense was not committed if the suspect has been taken to the hospital from the scene of the accident for emergency medical care." 174 W.Va. at 472, 327 S.E.2d at 452–53.

We did not incorporate into *Franklin* the misdemeanor statutory requirement that a citation be issued for a possible felony when the defendant is not immediately taken before a magistrate.

In the case now before the Court, the trooper had probable cause to suspect that Mr. Shugars was guilty of a felony under W.Va.Code, 17C–5–2 (a) (1983). The arresting trooper responded to the report of an accident and personally observed the accident site. He knew that Mrs. Ganoe died as a result of the accident and saw a half-full wine bottle in the defendant's vehicle. Within two hours of the accident, the trooper spoke with the defendant at the hospital, told him he was being charged, and obtained a voluntary consent to perform a blood alcohol test. Under these circumstances, the omission of a citation is not fatal to the lawful arrest.

■ The defendant argues that the subsequent arrest on September 3 involved a lapse of time too great for the test to be incidental to that arrest, as described in Syllabus Point 2 of *Byers:*

"An arrest is the taking, seizing or detaining of the person of another (1) by touching or putting hands on him; (2) by any act or speech that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested."

In *Byers,* the warrant and arrest of the defendant came fourteen days after the offense was committed. We said "[t]he lapse of time between the test and the arrest is vital in determining whether the test is performed incident to arrest." Here, the record reveals that Mr. Shugars was verbally charged with DUI before the

test, a warrant was obtained within twenty-four hours of the test being performed, and the defendant acknowledged in writing within forty-eight hours of the test that he had been told of the charges before the test. The defendant, in fact, appeared to consent to the arrest by appearing before the magistrate immediately upon discharge from the hospital. We conclude, therefore, that there was a lawful arrest and the blood testing was performed incident to that arrest.[2]

The defendant next maintains that the court erred by admitting into evidence the wine bottle found on the floor of his vehicle at the time of the accident and a photograph of the wine bottle on the floor of the vehicle because the evidence was irrelevant, cumulative, and unfairly prejudicial. These alleged errors are controlled by Syllabus Point 7 of *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910 (1985):

" ' "Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk,* 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983).' Syllabus Point 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983)."

*See also State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983); *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955); F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 6.1(E) at 289–90 (2d ed. 1986).

■ The court conducted an *in camera* hearing on the admissibility of this evidence when it was offered during the trial. The defendant argued that because he did not dispute that he had been drinking, the wine bottle and the photograph were not relevant. Additionally, the defendant argued that this evidence was cumulative and, therefore, any probative value was outweighed by the danger of unfair prejudice. The court found the evidence relevant particularly in view of the manner in which it came to light and the situation

**2.** Because we find that the blood sample was obtained incidental to a lawful arrest, there was no violation of the defendant's rights under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution.

surrounding its coming to light, i.e., its location at the time of the accident. We concur in the trial court's judgment and uphold its finding that this evidence was relevant and probative.

 The final assignment of error was that the State's nondisclosure of scientific tests performed by its accident reconstruction expert hampered the preparation and presentation of the defendant's case. On January 10, 1986, the defendant made a motion for discovery pursuant to Rule 16 of the West Virginia Rules of Criminal Procedure.[3] The defendant maintains that the State did not disclose any information to the defense about Carl Legursky, an accident reconstruction expert, until one week before trial and that full disclosure only came during Mr. Legursky's testimony at trial. The defendant contends that this prevented the defense from being able to prepare for Mr. Legursky's testimony.

Our review of the record reveals that on February 10, 1986, the State disclosed to the defendant a list of persons intended to be called as witnesses at trial and this list included Mr. Legursky's name and address. Furthermore, at a proceeding on July 2, 1986, to consider pending motions, counsel for the defendant stated that he spoke with Mr. Legursky the day before and that his reports were not complete, but that he had made some preliminary determinations. The prosecution acknowledged that the expert's report was not complete and concurred in the defendant's motion for a continuance.

When the trial commenced in November, 1986, the defendant moved to exclude Mr. Legursky's reports and testimony arguing that its disclosure one week before trial afforded him an inadequate opportunity to reasonably defend against the report. The State responded that it disclosed the expert's report within one day after receiving it. There is nothing in the record to show that defense counsel made any motions to the court about the delay in disclosure. *See State v. Miller,* 178 W.Va. 618, 625, 363 S.E.2d 504, 511 (1987). We believe that under this set of facts, the defendant was not surprised or prejudiced and no error resulted.

For the foregoing reasons, we therefore affirm the judgment of the Circuit Court of Harrison County.

AFFIRMED.

---

3. Rule 16(a)(1)(D), W.Va.R.Cr.P., provides:
   "Upon request of the defendant the State shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the State, and which are material to the preparation of the defense or are intended for use by the State as evidence in chief at the trial."