591 So.2d 748 (1991)
STATE of Louisiana
v.
Dennis EDWARDS.
No. KA 90 1626.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
*750 Bryan Bush, Dist. Atty. by Kay Howell, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
Dennis Edwards was charged with driving while intoxicated (4th offense), in violation of La.R.S. 14:98. He pled not guilty and, following a jury trial, was found guilty as charged. Defendant was sentenced to twenty-four years at hard labor, to be served concurrently with any other sentence defendant was then serving. He now appeals, urging eleven assignments. In brief, defendant expressly abandons assignments of error numbers 2, 3, 4, 5, 6, 7, 8, and 9.

FACTS
On September 2, 1989, at about 2:00 a.m., Baton Rouge City Police Officer Daniel Brim was traveling eastbound on North Street. Officer Angela Mamou was in another police unit following Officer Brim and traveling in the same direction. As Officer Brim approached 26th Street, he saw a vehicle blocking the two eastbound lanes of North Street. That vehicle was stationary. As he came closer, Officer Brim saw that a man seated in the driver's seat was asleep. No one else was in the vehicle. Officer Brim turned his spotlight on the vehicle, stopped his police unit, and started to exit his vehicle to approach the stopped vehicle. Suddenly, the driver awoke and turned his vehicle; this vehicle almost sideswiped another automobile headed westbound. Officer Brim reentered his vehicle, made a U-turn, and stopped defendant in the next block. Officer Mamou followed in her unit.
Using his public address system, Officer Brim ordered defendant out of his vehicle. Defendant exited his vehicle slowly and leaned on his automobile as he walked to the rear to meet the officers. Defendant swayed and had a strong odor of alcohol on his breath, slurred speech and "glossy red" eyes. Defendant was advised that he was under investigation for DWI and would be taken to the police station for an alcohol intoxilyzer test. Defendant fell asleep as he was put in the police vehicle.
At the station, Officer Todd Lee advised defendant of his Miranda rights and attempted to administer the intoxilyzer test; however, defendant was incoherent and fell asleep on the machine.
At trial, a fingerprint expert determined that defendant's fingerprints matched those on records of three prior DWI convictions which serve as the basis for defendant's 4th DWI offense charge in the instant case.

MOTION FOR MISTRIAL
By means of assignment of error number one, defendant contends that the trial court erred in denying his motion for mistrial urged during voir dire. When voir dire questioning began and the venire was seated in the courtroom, a poster denouncing DWI hung over the witness stand in the courtroom. After questioning of several *751 jurors began (and before any jurors were sworn), the defense attorney asked for a bench conference. Following this conference, a recess was held. During the recess, the poster was removed. When the trial reconvened the trial court stated, in the presence of the venire, that the poster did not reflect its position on this case and that it did not have a position on this particular case or any other case. The trial court asked the twelve prospective jurors, who were being questioned, if the poster had prejudiced anyone. No one stated that he or she had been prejudiced.
During the continuation of the voir dire, the trial judge asked other prospective jurors if the poster had prejudiced them. The second group of seven prospective jurors responded negatively when asked if they felt that the poster was a reflection of the judge's personal feelings on the case. Of the next group of three persons questioned, one stated that she did not see the poster; the other two answered negatively when asked if they believed the poster was the judge's comment on the guilt or innocence of the defendant. During questioning by the trial judge, prospective juror Warren Tullier was asked if he believed the poster indicated the trial court's "feelings in this case"; he answered "No." The last questioned prospective juror stated that he did not see the poster. The pertinent part of the questioning of two prospective jurors, Adrian Kaiser, who was empaneled as a juror, and Betty Dixon, who was not chosen as a juror, is as follows:
By the court:
Q.... Mr. Kaiser, let me get that out of the way. What about the poster?
A. I noticed it, I read it, and it hit me as, you know, I did put the case and the poster together.
Q. Did you put it together as a comment of mine on the case?
A. No, sir.
Q. Or anybody elses (sic)?
A. No, sir.
* * * * * *
By Mr. Screen [the defense attorney]:
Q. Mr. Kaiser, you said you did put that poster together with this trial?
A. I read it. When I read it I kind of did a double take. I said, this is a DWI trial, you know, and I looked back at it and read it again. I don't know why but it did make an impact on my mind.
Q. Do you think that may affect your decision in this case?
A. No, I don't think it would affect my decision.
Q. Do you think subconsciously it may have some affect (sic) on your listening to the evidence in this case.
A. I don't think it will, no.
* * * * * *
Questioning of Betty Dixon, by the Court:
Q. That poster we were talking about dealing with DWI, does that in any way indicate my feelings toward this case, in your mind?
A. I don't think so.
Q. Did it influence you in any way?
A. No.
In denying the motion for mistrial, the trial court described the poster as a 3-½' by 2-½' foot sign, depicting a grave with a cross on it. The poster also stated "You have the right to drink; You have the right to drive; You have the right to remain silent. Don't drink and drive; don't ride with anyone who does." The trial court noted that it was satisfied that the first group of prospective jurors were not influenced by the poster and that they did not believe it meant a statement by the trial court as to its "feelings" toward this case. The trial court added that the poster was similar to a piece of furniture in the courtroom and that it was an oversight that the poster was left in the courtroom in the venire's view.
On appeal, defendant argues that this poster was not just a "piece of furniture" but was a direct comment about the crime for which defendant was charged. Furthermore, he contends that, despite the trial court's statements to the contrary, the poster illustrates the trial court's opinion about the offense. Additionally, he argues that its presence in the courtroom in the prospective jurors' view was prejudicial and *752 denied him a fair trial. Relying on La. C.Cr.P. arts. 771 and 772, defendant argues that the poster is a prejudicial comment by the trial judge.
The state argues that it was "clearly apparent to the jury that the sign was not a reflection of the judge's feelings on the issue of DWI", and that the statements on the poster were not judicial "comments" within the prohibition of La.C.Cr.P. art. 771 and, thus, did not require a mistrial. Moreover, the state argues defendant was not prejudiced by the poster's presence and that, even if prejudiced, the trial court's admonition to the jury sufficiently cured any resulting prejudice.[1]
At the onset, we note that we disagree with the state's argument that the poster was not a reflection of the judge's opinion on DWI. The poster was not hung outside the courtroom in the lobby; rather, it was hung over the witness stand next to the judge's bench and in the view of anyone in the courtroom. Furthermore, the courtroom is the judge's domain; and the judge is considered the dominant person in that arena. It is conceivable and likely that persons viewing the DWI poster would associate it with the trial judge and view it as a reflection of the judge's opinion on DWI.
The right to a fair trial is a fundamental liberty secured by the Sixth Amendment through the due process clause of the Fourteenth Amendment to the United States Constitution. Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975). The presumption of innocence, although not articulated in the United States Constitution, is a basic component of a fair trial under our system of criminal justice. Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). Furthermore, under Article I, § 16, of the Louisiana Constitution, every person charged with a crime is entitled to an impartial trial.
The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary; and its enforcement lies at the foundation of the administration of our criminal law. Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481, 491 (1895). To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. Estelle v. Williams, 96 S.Ct. at 1693; In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970).
The jurors' states of mind cannot always be dispositive of the issue of whether or not a practice denied a defendant's constitutional right to a fair trial. See Holbrook v. Flynn, 475 U.S. 560, 571, 106 S.Ct. 1340, 1347, 89 L.Ed.2d 525 (1986). If a procedure employed involves such a probability that prejudice will result that the procedure is deemed inherently lacking in due process, little stock need be placed in juror's claims to the contrary. Although a practice may be inherently prejudicial, jurors will not necessarily be fully conscious of the effect it will have on their attitude toward the accused, especially when jurors are questioned at the very beginning of proceedings; at that point, they can only speculate on how they will feel after being exposed to a practice daily over the course of a long trial. Whenever a courtroom arrangement is challenged as inherently prejudicial, therefore, the question must be not whether or not jurors actually articulated a consciousness of some prejudicial effect but, rather, whether or not "an unacceptable *753 risk is presented of impermissible factors coming into play." Holbrook v. Flynn, 475 U.S. at 570, 106 S.Ct. at 1346-1347; Estelle v. Williams, 425 U.S. at 505, 96 S.Ct. at 1693. Furthermore, if the challenged practice is not found to be inherently prejudicial, then the inquiry is whether or not defendant showed actual prejudice caused by the practice. See Holbrook v. Flynn, 475 U.S. at 572, 106 S.Ct. at 1347-1348.
We can find no cases involving identical facts. However, there are a few cases which involve factual circumstances and issues analogous to those presented herein. One such case is Estelle v. Williams, cited above. In Estelle, the United States Supreme Court held that the compelled wearing of prison garb during trial can create an impermissible influence on the jury throughout trial. However, defendant failed to make an objection during the trial; and his failure to do so negated the suggestion that he was compelled to wear prison clothes. Estelle v. Williams, 425 U.S. at 512-513, 96 S.Ct. at 1697.
In Norris v. Risley, 918 F.2d 828, 830 (9th Cir.1990), defendant was charged, tried and convicted in Montana state court of kidnapping and sexual intercourse. After exhausting state court remedies, Norris filed for habeas corpus relief in a United States District Court. That Court denied habeas corpus relief without an evidentiary hearing. Thereafter, the United States Ninth Circuit Court of Appeals remanded the case to the United States District Court to determine the accuracy of Norris' allegations in his habeas petition. The Ninth Circuit decided the case based on the factual findings made by the United States District Court on remand. Norris v. Risley, 918 F.2d at 830. According to those findings, during Norris' second arraignment approximately fifteen women of local organizations wore buttons, 2½ inches in diameter, stating "Women Against Rape"; some women wore the buttons during the trial. The word "Rape" was underlined with a broad red stroke. The United States District Court concluded that the "environing atmosphere" both inside and outside the courtroom did not pose an unacceptable risk of prejudice and concluded that defendant's right to a fair trial was not infringed. In reviewing the United States District Court's conclusions, the Ninth Circuit found that because defendant did not allege or show actual prejudice it must determine whether or not the wearing of the buttons during the trial was so inherently prejudicial as to pose an unacceptable threat to the right to a fair trial. That court stated:
Because the buttons, which were donned before any evidence was introduced, conveyed an implied message encouraging the jury to find Norris guilty, and because the buttons were not subject to the constitutional safeguards of confrontation and cross-examination, they are clearly the sort of "impermissible factors" that courts must ensure receive no weight. Thus, we must decide whether the risk that the buttons did `come into play' was an unacceptable one. To decide whether that risk was unacceptable we specifically look at the relationship of exposure to the buttons to two facets of the right to a fair trial: the presumption of innocence and the right of confrontation and cross-examination.... Just as the compelled wearing of prison garb during trial [referring to Estelle v. Williams] can create an impermissible influence on the jury throughout trial, the buttons' message, which implied that Norris raped the complaining witness, constituted a continuing reminder that various spectators believed Norris' guilt before it was proven, eroding the presumption of innocence. Moreover, the buttons' message was far more direct than that to be inferred from the wearing of prison attire, which has no communicative purpose. The women who wore buttons obviously intended to convey a message. (footnotes omitted).
Norris v. Risley, 918 F.2d at 830-832.
Moreover, the buttons interfered with defendant's constitutional rights of confrontation and cross-examination. The United States Ninth Circuit Court of Appeals found the wearing of the buttons constituted a statement that was not subject to *754 cross-examination. Unlike the state's direct evidence, which could have been refuted by any manner of contrary testimony to be judged ultimately on the basis of each declarant's credibility, the buttons' informal accusation was not susceptible to traditional methods of refutation. Instead, the accusation stood unchallenged, lending credibility and weight to the state's case without being subject to the constitutional protections to which such evidence is ordinarily subjected. Thus, that court found that the buttons tainted defendant's right to a fair trial both by eroding the presumption of innocence and by allowing extraneous prejudicial consideration to permeate the proceedings without subjecting them to the safeguards of confrontation and cross-examination. Norris v. Risley, 918 F.2d at 834.
In Holbrook v. Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the issue presented was whether or not the presence of four uniformed and armed officers at the trial was so inherently prejudicial that defendant was denied his right to a fair trial. The United States Supreme Court held in that case that it could not find an unacceptable risk of prejudice in the spectacle of the four uniformed officers sitting in the first row of the courtroom spectator's section. Thus, this practice was not so inherently prejudicial.
In State v. Rose, 112 N.J. 454, 548 A.2d 1058 (1988), the New Jersey Supreme Court found no prejudice in the trial court's ruling allowing nine or ten uniformed police officers to sit in the courtroom during defendant's trial for murder of a policeman. Nonetheless, that Court quotes Holbrook v. Flynn, which established the first inquiry as whether or not the practice is inherently prejudicial, and the second inquiry, if the practice is not inherently prejudicial, as whether or not defendant has shown actual prejudice. The Court in that case found that defendant Rose failed to carry his burden and that there was no error in the trial court's refusal to exclude the uniformed officers. The Rose case also noted with approval the decision in State v. McNaught, 238 Kan. 567, 713 P.2d 457 (1986), a vehicular homicide case in which defendant was allegedly driving under the influence of alcohol (DUI) and numerous spectators were present in the trial court wearing buttons inscribed MADD (Mothers Against Drunk Driving) and SADD (Students Against Drunk Driving).
The Supreme Court of Kansas in the McNaught case stated that the record was silent as to the factual circumstances present regarding the number of MADD and SADD members attending the trial and the number that wore buttons. That court concluded that defendant "failed to show that he was prejudiced in any way by the wearing of MADD and SADD buttons by spectators in the courtroom." That court also noted that a reading of the record and a consideration of the verdicts of the jury showed that the members of the jury carefully considered the evidence and were not prejudiced against the defendant; as support for this finding, that court noted the jury's acquittal of defendant on the felony charge of involuntary manslaughter and three other charges and that the jury found defendant guilty of only two misdemeanor charges.
In a similar case, State v. Franklin, 174 W.Va. 469, 327 S.E.2d 449 (1985), defendant was charged with and convicted of driving under the influence of alcohol resulting in death. This case involved the wearing of MADD buttons which were given out by the local sheriff (who was a member of the local MADD organization) as persons entered the court building. A prospective juror, who received one of these buttons, was excused and the sheriff was censured by the trial court; however, the sheriff and ten to thirty other MADD supporters were highly visible in the courtroom during the three day trial. The trial court conducted an extensive voir dire on the subject of MADD and ascertained that fourteen of the twenty members of the jury panel knew about the organization's activities and goals. Two prospective jurors were dismissed; one was a MADD member and the other admitted to being uncomfortable sitting on the jury with MADD members opposite her. However, other than excusing these two prospective *755 jurors, the trial court refused to take any other action against the MADD presence. The Supreme Court of Appeals of West Virginia, in finding reversible error, stated:
In this case the spectators were clearly distinguishable from other visitors in the courtroom and, led by the sheriff, they constituted a formidable, albeit passive, influence on the jury. Indeed, the court's cardinal failure in this case was to take no action whatever against a predominant group of ordinary citizens who were tooth and nail opposed to any finding that the defendant was not guilty. This Court quite simply cannot state that the mere presence of the spectators wearing MADD buttons and the pressure and activities of the uniformed sheriff leading them did not do irreparable damage to the defendant's right to a fair trial by an impartial jury.
State v. Franklin, 327 S.E.2d at 455.
In determining whether or not a defendant was denied a fair trial, the decision of whether or not the jury was or possibly could have been influenced is one which is necessarily left to the sound discretion of the trial court, the exercise of which will not be disturbed unless it appears that prejudice resulted from the disturbance. State v. McNaught, 713 P.2d at 466.
In the case sub judice, the initial inquiry is whether or not the presence of the DWI poster in the courtroom in the prospective jurors' view for a short period of time was inherently prejudicial. To answer that inquiry, this Court must determine whether or not an unacceptable risk of prejudice was presented. Herein, the poster, as we have previously stated, is communicative and obviously a statement by the trial court on DWI. It is, as were the "Women Against Rape" and MADD buttons, not subject to the constitutional safeguards of confrontation and cross-examination, and, thus, is an impermissible factor.
In determining if the risk that the poster did "come into play" was an unacceptable one, we look at the relationship of exposure to the poster to the two facets of the right to a fair trial: the presumption of innocence and the right of confrontation and cross-examination. Herein, we note that the exposure to the poster was for a short period and the poster was removed prior to the completion of voir dire and actual commencement of trial. The poster was not a continuing message during the trial as were the buttons worn by spectators in the Norris, McNaught, and Franklin cases. Furthermore, the trial court admonished the jury not to view the poster as a reflection of its opinion on defendant's case. Given these factors, we do not find that the DWI poster, under the facts of this specific case, created an unacceptable risk of prejudice on the jury. Thus, we do not find the poster's presence in the courtroom under the facts of this case was inherently prejudicial.[2]
The next inquiry is whether or not actual prejudice was shown by defendant. Herein, during voir dire questioning the trial court questioned the prospective jurors as to the poster's influence on them. Only one prospective juror, Adrian Kaiser, indicated he associated the poster with defendant's case; however, Mr. Kaiser stated that he did not believe it would affect his decision on the case. After reviewing the record, we find that defendant did not carry his burden of showing actual prejudice was caused by the DWI poster left in the courtroom in the jury venire's view.
This assignment of error lacks merit.

SUFFICIENCY OF EVIDENCE
By assignment of error number ten, defendant argues that there was insufficient evidence to convict him of DWI 4th offense. Specifically, he contends that the state did not prove beyond a reasonable doubt that he was under the influence of alcohol. Defendant argues that the only testimony of defendant's intoxication was *756 that of the three police officers who made an assumption about defendant's intoxicated state. Defendant further contends that his being asleep was a valid explanation for his "glossy eyes" and imbalance.
Initially, we note that defendant failed to file a motion for post-verdict judgment of acquittal, the proper procedural mechanism for raising the issue of sufficiency of the evidence. However, this court will address the merits of defendant's argument since it is briefed pursuant to a formal assignment of error. State v. Halford, 536 So.2d 537, 540 n. 1 (La.App. 1st Cir.1988), writ denied, 548 So.2d 319 (La. 1989).
The standard of review for the sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676, 678 (La.1984). In order to convict an accused of driving while intoxicated, the state need only prove that defendant was operating a vehicle and that defendant was under the influence of alcohol or drugs. State v. Pitre, 532 So.2d 424, 428 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (La.1989).
Intoxication, with the attendant behavioral manifestations, is an observable condition about which a witness may testify. The behavioral manifestations necessary to support a conviction for driving while intoxicated must be determined on a case by case basis. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. Pitre, 532 So.2d at 428. Herein, the evidence of defendant's intoxication consisted of observations of three police officers. The jury's verdict indicated that, after considering the credibility of the witnesses and weighing the evidence, it accepted the testimony of the officers. Our review of the record indicates the evidence was sufficient to allow any rational trier of fact to conclude beyond a reasonable doubt that defendant was driving while intoxicated.
This assignment of error lacks merit.

SENTENCE
In assignment of error number eleven, defendant argues that his twenty-four year sentence was excessive and that the trial court failed to comply with La.C.Cr.P. art. 894.1 in imposing the sentence. As to the requirement of compliance with La.C.Cr.P. art. 894.1, defendant argues that the trial court only considered his prior criminal history.
The trial court has wide discretion in imposition of a sentence within statutory limits. State v. Halford, 536 So.2d at 541. For a 4th offense DWI conviction, the penalty ranges from imprisonment at hard labor for not less than ten years to not more than thirty years. La.R.S. 14:98 E. Herein, the penalty actually imposed was less than the maximum assessable penalty. Given compliance with the sentencing criteria of La.C.Cr.P. art. 894.1, the sentence imposed will not be set aside in the absence of manifest abuse of discretion. State v. Halford, 536 So.2d at 541.
Generally a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if one's sense of justice is shocked when comparing the punishment imposed to the crime committed, in light of the harm done to society. State v. Halford, 536 So.2d at 541.
The trial court's reasons for sentencing are as follows:
Mr. Edwards, this is your eighth conviction for DWI. You've been arrested for twenty-six different crimes. You're forty years old, so you're not a youthful offender. You know, some yearsabout a year ago, I guess, there was [a] young man in here that I sentenced to thirty years for this particular crime. At a later date I had to amend that down to twenty-five. And he had a worse record than you, but there was a distinct difference *757 between him and you. He knew he had a problem. He couldn't do anything about it, but recognized the fact that he had a problem. You, on the other hand, have totally denied any culpability on any crime. You're as pure as the white snow in your mind and your total denial indicates to me that if you were to get out in the near [future] you'd go right back to doing it again, with no remorse. So in regard I consider you perhaps to be just as bad, maybe worse, than this other fellow. One thing is for sure. It's incumbent upon me to do what I can to keep the streets of Baton Rouge safe from you ...
We find defendant's claim that the trial court failed to articulate reasons for sentencing to lack merit. The record indicates that the trial court considered the defendant's risk of committing another crime, his need for correctional treatment, and the seriousness of the crime. Additionally, the reasons indicate that the trial court considered other grounds, including defendant's lengthy prior history of criminal activity, the likelihood that defendant would commit another offense, and the defendant's attitude. Clearly, the trial court considered mitigating factors and failed to find any of these factors.
As to the length of the sentence, this court has found a sentence of twenty years for a conviction of DWI 4th offense not to be excessive. See State v. Halford, 536 So.2d at 541.
Herein, considering the reasons given by the trial court, defendant's prior DWI convictions and other criminal history, we cannot say that the sentence imposed is excessive under the circumstances.
This assignment of error lacks merit.

PATENT ERROR
After reviewing the record for patent error, we have discovered a patent sentencing error caused by the trial court's failure to give defendant credit for time served. See La.C.Cr.P. art. 880. Accordingly, we amend the sentence to reflect that defendant is to be given credit for time served prior to execution of his sentence. See La.C.Cr.P. art. 882(A). See also State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR AMENDMENT OF COMMITMENT AND MINUTE ENTRY.
NOTES
[1] The state also argues that the defendant failed to properly designate the voir dire portion of the record, and, thus, should be procedurally barred from raising this issue. However, defendant, in his motion for appeal, designated for transcription, "all portions of record to which defendant may be legally entitled." Although this designation is not as specific as it should have been, in light of the assignment of error regarding this issue, defendant is entitled to have the voir dire transcribed. See La.C.Cr.P. art. 914.1. See also Uniform Rules-Courts of Appeal, Rule 2-1.9. Thus, this Court has obtained and reviewed the transcript of the voir dire.
[2] This holding is specifically limited to the facts of this case. We do not determine whether or not an unacceptable risk of prejudice would have occurred had the DWI poster been left in the courtroom during the trial.