SHORTESS, Judge.
Richard D. Davis (defendant) was charged by bill of information with driving while intoxicated, fourth offense. LSA-R.S. 14:98. He pled guilty. The trial court imposed a sentence of imprisonment at hard labor for thirty years to run concurrently with any sentence defendant was then serving and with credit for time served. On appeal, defendant urged in a single assignment of error that the sentence imposed was excessive and that the trial court failed to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1. This court found no merit to defendant’s assignment of error and affirmed. State v. Davis, 546 So.2d 535 (La.App. 1st Cir.1989). Thereafter, in State v. Davis, 552 So.2d 373 (La.1989), the supreme court granted defendant’s writ application; vacated defendant’s sentence; and remanded the case to the trial court for a full sentencing hearing and resentencing with consideration of any mitigating circumstances and complete articulation of the sentencing guidelines of LSA-C.Cr.P. art. 894.1. In accordance with the supreme court’s decision, the trial court held a sentencing hearing on March 1,1990 (remand hearing), and six days later sentenced defendant to imprisonment at hard labor for a term of twenty-five years. Defendant again appeals and urges two assignments of error.
As noted in our original opinion, 546 So.2d at 536, defendant was on probation after a conviction of driving while intoxicated, third offense, and had recently completed serving a one-year sentence in the parish jail, which was a condition of his probation, when this charge was brought. Defendant pled guilty in return for an agreement with the state that it would neither oppose the imposition of a sentence concurrent with the five-year term he had received for driving while intoxicated, third offense, nor file an additional charge for another arrest for driving while intoxicated.
ASSIGNMENT OF ERROR NO. ONE
Defendant contends that his guilty plea to this charge was constitutionally infirm because it was not knowingly, voluntarily, and intelligently entered. He argues (on remand) that the trial court erroneously denied his motion to withdraw the plea, *1236 which was grounded on his claim that he was pressured into entering the plea by statements made by the public defender who represented him at the time he pled guilty in the trial court.
The record reflects that the trial court conducted a hearing on March 1, 1990, on defendant’s motion to withdraw the guilty plea. At this hearing, defendant presented his own testimony and that of Tim Screen, the public defender who represented him on May 4, 1988, when he entered the plea.
Defendant asserts he was pressured into pleading guilty by a statement made by Screen that he had a “very weak case” and a statement by the trial court concerning his right to trial by jury.
During his testimony at the remand hearing, defendant stated he had conferred with Screen on May 4, 1988. Screen told him he had a weak case. However, defendant acknowledged Screen also informed him he would do whatever defendant wanted.
The statement by the trial court on which defendant relies was made during the May 4, 1988, Boykin hearing while the court was advising defendant of his rights. It is included in the following exchange:
Q [by the trial court] Now, you have a right to go to trial. There ⅛ a jury on the next floor waiting to come down here if you so desire. It would take ten out of twelve of those jurors to find you guilty or not guilty, or to find you guilty of a lesser offense. Do you understand that?
A [by defendant] Yes, sir.
[Emphasis added.]
In further testimony, defendant claimed his understanding of the court’s statement that there was “a jury on the next floor waiting to come down” was not that twelve jurors would be selected from a larger group of potential jurors but, rather, that twelve jurors, who had already been selected, were ready to try the case. Defendant testified he thought “there were twelve members of the MADD mother’s organization (sic) upstairs and I didn’t have a snowball’s chance in hell and I better go along with the program and do the best that I could.” According to defendant, he had “not totally” made up his mind to enter the guilty plea until the trial court made the statement, at which time he actually decided to plead guilty. Defendant testified he did not stop and ask defense counsel or the trial court for any clarification of the statement at issue because he thought the trial court’s statement regarding the jury was “quite plain.”
Notwithstanding the foregoing assertions, defendant acknowledged that before the trial court made its statement, Screen stated during the Boykin colloquy that defendant was aware of his right to a trial by judge and jury and that “we have concluded in both cases (i.e., the instant case and the other DWI as to which the state agreed not to file an additional formal charge) he really wouldn’t stand a chance.” During his direct examination at the hearing on the motion to withdraw the plea, Screen confirmed that at the beginning of the guilty plea proceeding before the trial court conducted the Boykin examination he stated that defendant was aware of his rights to trial by judge and jury and that “we’ve concluded in both cases he wouldn’t stand a chance and this is his only option.” Screen testified: “That’s what I stated based on my information I received from [defendant].” During cross-examination, Screen acknowledged that normally when he discusses a case prior to trial with a client he makes the client aware of all the ramifications and options available to the client and explains that the client will have a part in picking the jury for trial if the client’s choice is to exercise the right to be tried by a jury.[1]
At the conclusion of the hearing on the motion to withdraw the guilty plea, the trial court permitted the defense and the prosecution to argue their respective positions prior to issuing its ruling. While conceding that Screen had advised defen *1237 dant of his right to a jury trial and that defendant had been “properly Boykin-ized” by the trial court, defense counsel continued to argue that defendant did not understand the right to a jury trial and was mentally pressured into pleading guilty by the court’s statement regarding that right.
In its ruling denying the motion, the trial court noted that it found defendant to be of average or above average intelligence with a “decent education.” Regarding the court’s statement at the Boykin hearing that “there’s a jury on the next floor ...,” the court noted its regrettable inadvertent failure to use the words “jury venire” rather than merely the word “jury.” In that regard, the court correctly recognized that had it used the term “jury venire” instead of “jury,” the primary issue on which defendant relied in support of the claimed constitutional infirmity of his guilty plea would not have materialized. Nevertheless, the court focused on the actual statement it made at the Boykin examination and concluded that it did not think anyone envisioned a trial by a secretly chosem petit jury picked without seeing the accused. More particularly, the trial court stated it was convinced defendant knew what he was doing in entering the plea. The court further stated it believed there was a knowing, voluntary and intelligent waiver of defendant’s right to trial, whether by judge or by jury.
A trial court may permit the withdrawal of a guilty plea at any time before sentencing. LSA-C.Cr.P. art. 559(A). The court’s decision is discretionary, subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Hebert, 506 So.2d 863, 865 (La.App. 1st Cir.1987). Even after sentencing, if a trial court finds “either that a plea of guilty was not entered freely and voluntarily or that the Boykin colloquy was inadequate, and that the plea, therefore, is constitutionally infirm, the Trial Court retains the authority to vacate the sentence and set aside the plea_” State v. Lewis, 421 So.2d 224, 226 (La.1982). See also State v. Bourgeois, 406 So.2d 550 (La. 1981), a case involving the situation presently before us, i.e., the review of a trial court’s denial of a defendant’s motion to withdraw a guilty plea on remand after the defendant’s sentence was vacated on original appeal.
A defendant may not withdraw a guilty plea simply because the sentence to be imposed is heavier than anticipated. It is not unreasonable for a trial court to deny a defendant the luxury of gambling on his sentence, then withdrawing his plea if and when he discovers, before imposition, the sentence is not to his liking. State v. Banks, 457 So.2d 1264, 1266 (La.App. 1st Cir.1984).
We find that the trial court did not abuse its discretion in denying defendant’s motion to withdraw the guilty plea. The record reflects that the trial court undertook a thorough and conscientious review of the rights defendant was relinquishing by entering his guilty plea and the possible consequences of waiving those rights. Defendant had a high school education and had taken three years of additional vocational and business courses. Defendant’s responses to questioning as reflected by the transcripts of his Boykin examination and the hearing on the motion to withdraw his guilty plea reveal he is quite articulate and support the trial court’s finding that defendant is of average or above average intelligence. As reflected by the transcript of the plea proceeding and Screen’s testimony, the review of Boykin rights by the trial court followed Screen’s advice to defendant concerning the right to jury trial. Notwithstanding the inadvertent failure of the trial court to utilize the words “jury venire” instead of the word “jury” in the statement to defendant, we are convinced that under these circumstances defendant knowingly, voluntarily, and intelligently entered the plea with a full understanding of the consequences.
Accordingly, this assignment lacks merit.
ASSIGNMENT OF ERROR NO. TWO
Defendant admits that he should be incarcerated but contends the sentence imposed on remand is excessive and should be reduced to a term of imprisonment of no more than ten years. Defendant also as *1238 serts that the trial court did not adequately comply with the sentencing guidelines in LSA-C.Cr.P. art. 894.1 because the court failed to consider his testimony and that of Alfred Alvarez, a correctional officer at Hunt Correctional Center where he is incarcerated, presented at the March 1, 1990, sentencing hearing as evidence of mitigating circumstances.
The trial court has wide discretion in imposition of a sentence within statutory limits. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Given compliance with the sentencing criteria of LSA-C.Cr.P. art. 894.1, the sentence imposed will not be set aside in the absence of manifest abuse of discretion. State v. Halford, 536 So.2d 537, 541 (La.App. 1st Cir.1988), writ denied, 548 So.2d 319 (La.1989).
Generally a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. State v. Thomas, 432 So.2d 325, 327 (La.App. 1st Cir.1983). A sentence is considered grossly disproportionate if one’s sense of justice is shocked when comparing the punishment imposed to the crime committed, in light of the harm done to society. 432 So.2d at 327.
Because defendant’s guilty plea was to fourth-offense DWI, his sentencing exposure was imprisonment at hard labor for a minimum of ten years and a maximum of thirty years. LSA-R.S. 14:98(E). On remand, defendant was sentenced to imprisonment at hard labor for twenty-five years.
The trial court held a remand hearing before it resentenced defendant, during which defendant introduced his own testimony and that of Alfred Alvarez. Alvarez testified that during the preceding eight to eight and one-half months, he became acquainted with defendant in his employment capacity at Hunt Correctional Center; that defendant had not given him any problems; and that defendant was an “extremely model prisoner” who did what he was told to do. While Alvarez stated defendant did not represent a danger to society, he acknowledged he had never observed defendant under the influence of alcohol. Alvarez further stated he did not know what defendant’s behavior would be like after he consumed alcohol.
At the conclusion of the remand hearing, the trial court noted that the hearing had been held in accordance with the supreme court’s order in State v. Davis, 552 So.2d 373 (La.1989), and that, in resentencing defendant, it would consider both aggravating and mitigating circumstances in conformity with that order. Prior to the hearing, the trial court indicated it was not prepared and had not made up its mind as to what sentence it would impose on resen-tencing defendant. The court further noted that the purpose of whatever sentence it imposed would not be strictly for punishment. The court remarked that a secondary purpose of the sentence would be as a deterrence to others; but the court indicated the primary purpose for the sentence would be to isolate defendant from society and, thereby, avoid the possible injury and death of others as a result of defendant’s driving while intoxicated.
A review of the record in this case reveals that, when the trial court imposed sentence on March 7, 1990, it carefully particularized the sentence, considering mitigating and aggravating factors as set forth in LSA-C.Cr.P. art. 894.1. Defendant, who was 33 years old, testified that he had been convicted of DWI eight times over an approximate eight-year period beginning in 1980 or 1981. In its reasons for sentencing, the trial court noted this admission and also noted that defendant was arrested for this offense about two weeks after he began serving a three-year probationary sentence for a third offense DWI conviction. In this context, the court concluded that there was an undue risk that during any period of suspended sentence and probation defendant would commit another crime, that defendant was in need of correctional treatment or a custodial environment most effectively provided by commitment to a correctional institution, and that a lesser sentence would deprecate the seriousness of the instant offense.
We cannot say that this sentence is excessive under these facts. The record reflects that the trial court fully and carefully considered the range of sentencing alter *1239 natives and individualized the sentence to this defendant for the crime involved. Accordingly, this assignment is without merit.
PATENT ERROR
Under the authority of LSA-C.Cr.P. art. 920(2), we routinely review appellate records for patent error. After reviewing the record, we have discovered error patent on its face. While the trial court correctly gave defendant credit for time served when it originally sentenced defendant, in resen-tencing defendant it failed to give such credit.
LSA-C.Cr.P. art. 880 requires the court to give a defendant “credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.” Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990).
Although we affirm the length of defendant’s sentence of twenty-five years at hard labor, we amend it to correct the patent sentencing error to reflect that he is to be given credit for time served prior to execution of the sentence. See LSA-C.Cr.P. art. 882(A). Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
AFFIRMED AND REMANDED WITH ORDER.

. The prosecutor's further questioning of Screen regarding the specific nature of the advice of the right to trial Screen gave to defendant prior to entry of the guilty plea was precluded by defendant’s assertion of his attorney-client privilege.