STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-891

STATE OF LOUISIANA

VERSUS

RAMON L. ELLENDER

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2016-37
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

James R. Lestage
District Attorney – 36th Judicial District
Richard Alan Morton
Assistant District Attorney – 36th Judicial District
124 South Stewart Street
DeRidder, LA 70634
Telephone: (337) 463-5578
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Martin E. Regan, Jr.
Barry S. Ranshi
Regan Law, P.L.C.
2125 St Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7260
COUNSEL FOR:
    Defendant/Appellant - Ramon L. Ellender

**THIBODEAUX, Chief Judge.**

Defendant, Ramon L. Ellender, appeals his conviction by a six-person jury for his fifth offense of driving while intoxicated. He was sentenced to fifty years at hard labor under the habitual offender statute. His appeal focuses on insufficiency of the evidence, excessive sentence, and an improper jury composition.

We affirm his conviction and sentence.

## I.

## ISSUES

We must decide:

(1)   whether there was sufficient evidence to convict Defendant;

(2)   whether the trial court deprived Defendant of a twelve-person jury and unconstitutionally convicted him by a six-person jury; and

(3)   whether Defendant's sentence is unconstitutionally excessive.

## II.

## FACTS AND PROCEDURAL HISTORY

Defendant, Ramon L. Ellender, was charged by Bill of Information with "Driving While Intoxicated, Fifth Offense," in violation of La.R.S. 14:98 and 14:98.4. A six-person jury unanimously found Defendant guilty as charged. The State filed a bill charging Defendant as a habitual offender under La.R.S. 15:529.1. Prior to jury selection, the State and Defendant stipulated to Defendant's four prior DWI convictions, which were not subject to the ten-year cleansing period.

Defendant filed a "Motion for Arrest of Judgment," alleging that his conviction should be reversed and that he should receive a new, twelve-person jury trial because La.R.S. 14:98.4(C) requires individuals who receive probation, parole, or suspension of sentence on a prior DWI, fourth offense, to serve a hard labor sentence of not less than ten nor more than thirty years. The trial court found that Defendant was properly tried by a six-person jury. In its written reasons, the trial court noted that the State and defense counsel had discussed the makeup of the jury prior to selection, that La.R.S. 14:98.4(C) was never discussed, and that everyone agreed that the proper jury size was a six-person jury.

The trial court, citing *State v. Brown*, 11-1044 (La. 3/13/12), 85 So.3d 52, ruled that Defendant had not waived his right to object to an improper jury composition because La.Code Crim.P. art. 859 lists errors in jury composition as a ground for arrest of judgment, an exception to the contemporaneous objection rule. The trial court further cited the supreme court's ruling in *State v. Dahlem*, 14-1555 (La. 3/15/16), 197 So.3d 676, which held that a similarly-situated defendant was not entitled to a twelve-person jury because the bill of information did not specifically charge him with the sentencing provision that required a hard labor sentence.

Defendant then filed a "Motion for New Trial," as did his defense counsel. Following a hearing, the trial court denied both of the motions. After a hearing and multiple memoranda submitted by defense counsel and the State, the trial court issued a written ruling and adjudicated Defendant "a fifth felony offender subject to sentencing under La.R.S. 15:529.1." Subsequently, Defendant was sentenced to fifty years at hard labor, the first two years to be served without benefit of probation, parole, or suspension of sentence; the remainder to be served

without probation or suspension of sentence; and the sentence to run consecutively with any other sentence that Defendant may have. Defendant was also fined $5,000 as required by La.R.S. 14:98.4.

Defendant filed a "Motion to Reconsider Sentence," alleging that his sentence was "excessive and based, at least partially, on evidence[] in dispute." The trial court denied the motion. The State also filed a "Motion to Reconsider Sentence," arguing that Defendant should have been sentenced under the habitual offender law as it stood when the offense was committed in 2015, not under the 2017 amendments to the law. Following a hearing, the trial court noted that Defendant's sentence, which remained unchanged, was imposed in accordance with the language of La.R.S. 15:529.1 as it stood at the time of the offense. The trial court noted:

> So what that does for Mr. Ellender's case is it changes the sentencing range in his case from 20 to 60 years under the habitual offender law that took effect by the 2017 amendments to go back to the law in effect as of October of 2015, which makes the habitual offender sentencing range 20 to life.

> The other thing it does, as long as the bill of information was filed prior to November 1, 2017, is it changes the cleansing period back to the ten-year prior cleansing period as opposed to the five-year cleansing period which took effect as of the 2017 amendment. And in this case the habitual offender bill of information was filed prior to that date; and, therefore, the ten-year cleansing period applies to Mr. Ellender's case. And most, if not all, of the legal arguments raised by the defense as to some of the prior convictions being within ten years but not within five years of one another is now a moot issue in the Court's opinion legally; because the cleansing period is back to one of ten years as it applies to Mr. Ellender's case.

III.

3

## LAW AND DISCUSSION

*Evidence and Testimony*

The State's first witness was Ms. Mary Benson. Ms. Benson testified that on October 9, 2015, she was standing on the sidewalk on West North Street, when she saw a red truck speed past her followed by a "little grey car." She said she believed the grey car rear-ended the red truck before the car turned around and sped past her going in the opposite direction. She said she saw the grey car hit multiple signs near or on the road both times it passed, noting parts of the car came off when the vehicle hit the signs. Ms. Benson testified that there were signs on both sides of the street, noting "[w]hen he went up the street he knocked that sign down; and when he c[a]me back down the other side, on [the] other side where the school bus c[a]me down, the school bus sign, they tore that sign down; and that church sign, they tore it down." Ms. Benson clarified that "the car did all the damage." She identified Defendant as the person driving the grey BMW shortly after the incident, and she identified him in open court as the driver of the vehicle.

*Mary Benson's 911 Call*

Ms. Benson called 911 at 6:40 p.m. and told the operator that a white guy was driving a little BMW going around one hundred miles per hour. She stated that the BMW hit the back of a red Ford truck, turned around at the bank, then came back and almost tore up a woman's car. She stated that the bottom of the car should be torn up, and there was debris all over the road.

Ms. Benson testified that she was about twenty to twenty-five feet away from the vehicle at the time of the incident, and she had no doubt that the Defendant was driving the BMW, "[f]ast, flying like a bat out of hell." Ms.

Benson also identified Defendant in a six-man photo lineup roughly a year after the incident. On cross-examination, Ms. Benson testified that she knew "exactly what both [drivers] look[ed] like." Defense counsel then introduced video from Corporal Edward Kuzmik's body camera when the officer first spoke with Ms. Benson following her 911 call.

### Body Camera Footage of Corporal Kuzmik

After discussing the sequence of events with Ms. Benson and the silver car parts stuck in the broken sign, Corporal Kuzmik entered his vehicle and proceeded to Defendant's residence where he was met by Sergeant Davidson, who told him they were taking Defendant to Ms. Benson for a possible identification.

Sergeant John Davidson, a patrol shift supervisor for the DeRidder Police Department with twelve years of law enforcement experience, testified that he was dispatched to West North Street for a hit-and-run involving a silver BMW. He stated that he subsequently remembered a silver BMW parked on John Henry Jones Street, about two blocks from the scene of the incident. He testified that he and two other officers, Corporals David Stanard and Gene Clark, proceeded to where he knew the silver BMW was parked, which was Defendant's home. Reserve Officer Mike Perkins also responded to Defendant's residence shortly thereafter. They arrived at Defendant's residence on John Henry Jones Street less than fifteen minutes after responding to the location of the incident on West North Street.

Upon arriving at Defendant's residence, they found a silver BMW with damage matching the description of the hit-and-run. Sergeant Davidson took photographs of the damage to the car which were later introduced into evidence.

Sergeant Davidson testified that Defendant was the only person to make himself known at the residence on John Henry Jones. He noted that the engine of the BMW was still giving off heat while he was taking photos of it, indicating that it had been recently driven. Sergeant Davidson noted that the car had damage to the trim and front fender as well as a flat tire. He also noted that the car was still in drive, the windows were down, and the key was still in the ignition in the "on" position, indicating someone had turned it off just enough to kill the engine without totally disengaging. This was corroborated by Corporal Clark. Sergeant Davidson testified he left to assist another officer on a separate call but subsequently observed part of Corporal Kuzmik's interview with Defendant. He also stated that he was familiar with Defendant from having worked a prior call involving him, and that Defendant had previously worked around the police department as a trustee.

Sergeant Davidson further testified that he believed Defendant was intoxicated, because he knew what Defendant was like when he was sober, and he was not acting sober. He testified that Defendant had an unsteady gait and that his speech appeared "a little off" during his interview. Corporal Clark testified that Defendant was unsteady on his feet and "had bloodshot, watery eyes . . . slurred speech and a strong odor of alcoholic beverages." Officer Perkins testified that Defendant seemed off-balanced, had slurred speech, and smelled of alcohol.

Upon arrival at Defendant's residence, Corporal Stanard approached the trailer home and noted that the front door was wide open and that Defendant "was completely naked, laying face-down on a couch in the living room with his clothes to his feet." Corporal Stanard stated that Defendant was detained, handcuffed, and read his *Miranda* rights at that point. Corporal Stanard testified

that Defendant's walk was unsteady and they were holding him up to keep him from falling and injuring himself. He also noted that he could smell alcohol coming from Defendant.

Reserve Officer Michael Perkins responded to the location of the incident and then proceeded to John Henry Jones Street to back up Corporals Stanard and Clark while Corporal Kuzmik spoke to the witness at the scene. Officer Perkins testified that he placed Defendant in the back of his police unit and escorted him to 208 West North Street, where Ms. Benson identified him as the driver of the grey BMW that she saw hit the sign. At that time, Corporal Kuzmik informed Defendant of his charges, and Officer Perkins transported him back to the police department. After transporting Defendant to the police department, Officer Perkins sat in on Corporal Kuzmik's interview with him. Officer Perkins noted that the interview was recorded by Corporal Kuzmik's body camera. He testified that Defendant never asked for an attorney or attempted to stop the interview.

Corporal Edward Kuzmik of the DeRidder Police Department's detective division testified that he was dispatched to the scene at 6:49 p.m., in response to a hit-and-run and reckless-driver call. Upon his arrival, he removed car parts and debris from the road near the intersection of Carlisle Street and North Street. He said the sign at the intersection was completely knocked down, and a sign for the Sweet Home Baptist Church, approximately five feet from the stop sign, was destroyed. After speaking to Ms. Benson, Corporal Kuzmik proceeded to Defendant's residence. Once there, he was directed by Sergeant Davidson to return to North Street to see if Ms. Benson identified Defendant as the driver of the BMW she witnessed hit the signs. After Ms. Benson identified Defendant as the driver of the BMW, Corporal Kuzmik took photos of the damage and debris on

7

North Street before heading to the police department to interview Defendant. Noting that the camera normally used to video interviews was not working, Corporal Kuzmik testified that he recorded Defendant's interview with his body camera.

### *Defendant's Statement to Corporal Kuzmik*

Defendant's statement, recorded on Corporal Kuzmik's body camera, was played for the jury and lasted roughly twelve minutes. Defendant initially told Corporal Kuzmik he was thirty-six years old and that his date of birth was September 19, 1949. When asked if he meant 1979, Defendant agreed.[1] Defendant put his head down while Corporal Kuzmik read him his *Miranda* rights and appeared to be asleep until Corporal Kuzmik touched his shoulder. Corporal Kuzmik asked Defendant about a scratch on his chin, which Defendant stated was from a razor. He claimed to have shaved around two or three in the afternoon. When asked how much he had had to drink, Defendant stated he had two bottles of whiskey. He told Corporal Kuzmik he started drinking around 3:00 p.m. and finished around 3:30 p.m.

Defendant stated he owned a truck and not a car multiple times while Corporal Kuzmik tried to ask if he was driving the grey BMW, then stated, "God Damn, I'm asking you a question. I have a truck." He then stated the BMW was his wife's car and that she was driving it. Defendant was then unable to tell Corporal Kuzmik where his wife was or why a witness identified him as driving the BMW. He stated, "The fair answer is: I was in bed sleeping." He then stated

---

[1]Corporal Kuzmik testified at trial that they subsequently learned that Defendant's date of birth was actually September 19, 1969, and that he was forty-six, not thirty-six.

that he went to bed at 8:30, seemingly confused by the officers asking him if he went to sleep at 8:30 a.m. or p.m.

When Corporal Kuzmik asked if Defendant was driving the grey BMW that was sitting in his driveway, Defendant appeared unable to comprehend or answer the question. Defendant acknowledged he was pretty intoxicated. Defendant then stated he was already on parole for a fourth offense DWI and should not be drinking. He then reiterated that he was at home sleeping.

Corporal Kuzmik identified a trio of forms used to substantiate Ms. Benson's subsequent identification of Defendant from a six-person photographic lineup on December 1, 2016. Following Defendant's statement, Corporal Kuzmik arrested him for reckless operation, hit and run, and driving under suspension and had him booked into the parish jail. Corporal Kuzmik testified the failure to initially charge Defendant with a DWI was an oversight on his part.

Corporal Kuzmik noted that Defendant had a flushed face, glassy eyes, and a "moderately strong odor of alcohol" when he first encountered him. He also noted that during the interview, he had to wake Defendant up; that Defendant's speech was slurred and that both his nose and ears were flushed. Corporal Kuzmik acknowledged telling Defendant he "was drunker than Cooter Brown." He also noted that Defendant believed he had gone to sleep at 8:30 p.m. awoke at 11:45 p.m.; however, the interview was taking place at 7:25 p.m. As with all of the other officers, Corporal Kuzmik confirmed that at no point did Defendant ever mention any physical injuries, medical issues, or other ailments which may have affected his speech, coordination, or ability to function. At that point, the State rested its case and defense counsel chose not to present a case in chief. The jury subsequently returned a unanimous verdict of guilty as charged.

### Insufficiency of the Evidence

Defendant contends there was insufficient evidence to prove his identity as the driver of the vehicle involved in the hit and run. Furthermore, he contends this is a circumstantial evidence case in which the State failed "to disprove the reasonable hypothesis that the [D]efendant got intoxicated at his house, where the police found him." Defendant's characterization of his case as a purely circumstantial evidence case is incorrect and Defendant himself told law enforcement that he drank two bottles of whiskey between 3:00 and 3:30 p.m., three hours before the hit and run.

The analysis for a sufficiency claim is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

> In order to convict an accused of driving while intoxicated, the prosecution need only prove that defendant was operating a vehicle and that defendant was under the influence of alcohol or drugs. *State v. Edwards*, 591 So.2d 748 (La.App. 1 Cir.1991). Some

behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. *Id.*; *State v. Pitre*, 532 So.2d 424 (La.App. 1 Cir.1988), *writ denied*, 538 So.2d 590 (La.1989). It is not necessary that a conviction of D.W.I. be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish the defendant's guilt. Intoxication is an observable condition about which a witness may testify. *State v. Allen*, 440 So.2d 1330 (La.1983).

*State v. Iles*, 96-256, pp. 7-8 (La.App. 3 Cir. 11/6/96), 684 So.2d 38, 42.

Furthermore, because Defendant was charged under La.R.S. 14:98.4 with a fourth or subsequent offense, the State was required to prove Defendant's prior valid convictions. However, defense counsel stipulated to the validity of Defendant's prior convictions. The State, therefore, only needed to prove Defendant was operating a vehicle while under the influence of alcohol or drugs.

Ms. Benson positively identified Defendant as the driver on at least three occasions: less than an hour after witnessing the accident, more than a year later when she picked Defendant out of a six-person photographic lineup, and in open court at trial. Accordingly, the State provided direct evidence Defendant was the driver of the grey BMW when it was involved in a hit and run on North Street at approximately 6:40 p.m.

Although Defendant attacks the State's failure to "conduct a standard field sobriety test, draw the [D]efendant's blood, or even offer him the option of taking a standard breathalyzer test," this court has long recognized such tests are not necessary to support a conviction for driving while intoxicated. As this court noted in *Iles*, 684 So.2d at 42, "the observations of an arresting officer may be sufficient to establish the defendant's guilt. Intoxication is an observable condition about which a witness may testify." Every law enforcement officer who came into

11

contact with Defendant on October 9, 2015, testified that he exhibited characteristics of being intoxicated when they came into contact with him around 7:00 p.m. He was described as having slurred speech and difficulty walking, and smelling of alcohol. Furthermore, Corporal Kuzmik noted that Defendant had glassy eyes and that both his nose and his ears were flushed.

In his statement, which was played for the jury's benefit, Defendant acknowledged that he was intoxicated and stated that he drank two bottles of whiskey about three hours before he went to sleep. Furthermore, Defendant could not accurately state his own age or date of birth and appeared to have trouble forming coherent statements. Observations of the law enforcement officers and the jury's own observations of Defendant's intoxication were more than sufficient to find that he was intoxicated.

Finally, Defendant contends that the State failed to disprove the hypothesis that Defendant got intoxicated at his home between the time of the hit and run and the time that law enforcement found him asleep, naked, on his couch less than thirty minutes later. This hypothesis was presented to the jury at trial and rejected. Furthermore, Defendant's own statement to police indicated that he became intoxicated hours before the accident. Defendant's timeline is questionable, given his claim during the interview at 7:25 p.m. that he had gone to sleep at 8:30 p.m., an impossibility since that time had not yet occurred; but significantly, it evidences a state of confusion consistent with intoxication. Thus, in "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Accordingly, this assignment of error lacks merit.

***Jury Composition***

Defendant contends that the trial court deprived him of his constitutional right to due process by trying him before a six-person jury rather than a twelve-person jury. We disagree. The Bill of Information in this case, states that Ramon L. Ellender, on or about October 9, 2015: "Did willfully and unlawfully violate R.S. 14:98 and R.S. 14:98.4, Driving While Intoxicated, Fifth Offense, by the intentional operation of a motor vehicle while under the influence of an alcoholic[] beverage[] (a felony)." The Bill of Information then outlines four other DWI convictions: 1992 in Sulphur, 1996 in Lake Charles, 2002 in DeRidder, and 2012 in DeRidder.

At the time of Defendant's 2015 offense, La.R.S. 14:98 provided in pertinent part:

> A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when any of the following conditions exist:
>
> (a) The operator is under the influence of alcoholic beverages.

Pursuant to La.R.S. 14:98.4, enacted in 2015 (emphasis added), a fourth offense violation was a *relative* felony, punishable by imprisonment *with or without* hard labor:

> A. (1) Except as modified by Subparagraphs (a) and (b) of this Paragraph, or as provided by Subsections B and C of this Section, *on a conviction of a fourth or subsequent offense violation of R.S. 14:98*, regardless of whether the fourth offense occurred before or after an earlier conviction, *the offender shall be fined five thousand dollars and imprisoned,* **with or without hard labor***, for not less than ten years nor more than thirty years*. Two years of the sentence of imprisonment shall be imposed without benefit of parole, probation, or suspension of sentence. Except in compliance with R.S.

14:98.5(B)(1), the mandatory minimum sentence cannot be served on home incarceration.

Relative felonies are tried by a six-person jury, pursuant to La.Const. art. 1, § 17, which in 2015 provided in pertinent part (emphasis added):

> **(A) Jury Trial in Criminal Cases.** A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment *is necessarily confinement at hard labor shall be tried before a jury of twelve persons*, ten of whom must concur to render a verdict. A case in which the punishment *may be confinement at hard labor or confinement without hard labor* for more than six months *shall be tried before a jury of six persons*, all of whom must concur to render a verdict.

Thus, according to the Bill of Information, Defendant was charged with a relative felony that required a six-person jury under the constitution. Defendant contends, however, that because he was on parole for a prior DWI fourth offense when he was arrested for his current conviction, La.R.S. 14:98.4(C) requires him to serve his time at hard labor, which requires a twelve-person jury. Pursuant to La.R.S. 14:98.4(C) (emphasis added):

> If the offender has previously received the benefit of parole, probation, or suspension of sentence on a conviction of a fourth or subsequent offense violation of R.S. 14:98, then on a subsequent conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the offense occurred before or after an earlier conviction, the offender shall be fined five thousand dollars and imprisoned *at hard labor* for not less than ten nor more than thirty years. No part of the sentence shall be imposed with benefit of parole, probation, or suspension of sentence, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.

14

Neither the Bill of Information nor any discussion by the parties or the trial court suggested the invocation of La.R.S. 14:98.4(C). In fact, all agreed and worked together to select the six-person jury required under the indicting language.

Notwithstanding, Defendant cites *State v. Jenkins*, 406 So.2d 1352 (La.1981) to support his contention that his conviction is null based on an insufficient jury. The *Jenkins* court stated, "We have consistently held that the verdict returned by a jury composed of fewer than the correct number of jurors is null." *Id.* at 1353. Defendant also argues *State v. Johnson*, 10-196 (La.App. 3 Cir. 11/24/10), 52 So.3d 273, where the defendant was charged and convicted of DWI fourth offense in violation of La.R.S. 14:98. There, the defendant contested his conviction on the grounds that trying him before a six-person jury was a nullity, as La.R.S. 14:98(E)(4)(a) at the time required that a defendant, who had previously been required to participate in substance abuse treatment or home incarceration, be sentenced to mandatory hard labor. A panel of this court held:

> Because Defendant, charged with fourth offense DWI, was previously required to participate in substance abuse treatment and was placed on home incarceration the law mandates he be tried before a jury of twelve persons. As Defendant was tried before a jury of only six persons, contrary to the provisions of our State Constitution requiring trial by twelve jurors for his offense, his conviction is null and is hereby set aside; his sentence is vacated; and the matter is remanded for a new trial. Defendant's assignment of error asserting his sentence is excessive is moot.

*Johnson*, 52 So.3d at 275.

Based upon *Jenkins* and *Johnson*, Defendant's contention that he should have received a new trial before a twelve-person jury would appear to have merit. However, the supreme court has since created an exception to the rule that this court applied in *Johnson*; namely, where as here, a defendant is ultimately

sentenced as a habitual offender, the empaneling of a six-person jury *before* trial does not lead to a reversal if the Bill of Information on its face indicates only a relative felony. More specifically, in the very similar case of *State v. Dahlem*, 197 So.3d 676, the Louisiana Supreme Court articulated as follows (emphasis added):

> It is imperative to note that the bill of information sets the parameters and dictates the mode of trial. Based solely upon the information on the face of the bill of information, the defendant in this case was properly tried before a six person jury, as the sentencing range for a fourth offense DWI, as listed in this particular bill of information, is not mandatory hard labor. Specifically, La. R.S. 14:98(E)(1)(a), in effect at the time of defendant's offense, provided that operating a vehicle while intoxicated, fourth offense, carried the following penalty range **with or without** hard labor:
>
> > . . . on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender **shall be imprisoned with or without hard labor** for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Two years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. (emphasis added).
>
> Given that the enhanced sentence to which the evidence made defendant subject was not apparent on the face of the bill of information, we specifically decline to create a duty requiring a trial judge to look beyond the face of the bill of information or the indictment, and the Title 14 penalty range. Nor is it the responsibility of a trial judge to interrogate the district attorney or independently investigate as to what evidence might be introduced that would require a different jury composition at the outset of a case. Doing so would be inappropriate and contrary to the efficient administration of criminal justice, and effectively result in bad policy.

*Id.* at 683.

In *Dahlem*, the supreme court stated in a footnote:

> We agree with Judge Kuhn's concurrence in the court of appeal's opinion, which states:

>> ....[T]rial of the defendant by a six-person jury was dictated by law in this case. The district attorney, in the exercise of his discretion, elected to charge the defendant pursuant to La. R.S. 14:98 with a fourth-offense DWI. Under La. R.S. 14:98(E)(1)(a), the punishment for fourth-offense DWI is imprisonment with or without hard labor for not less than ten years and not more than thirty years and a $5,000.00 fine. In accordance with La. Const. art. I, sec. 17(A), such a case "shall be tried before a jury or six persons, all of whom must concur to render a verdict." See also La.C.Cr.P. art. 782(A).

>> In reliance on these constitutional and statutory provisions, the State, the defense, and the trial court worked together to select a six-person jury to try this case. Although, the State later presented evidence at trial in connection with predicate # 3 which, if accepted, allowed for a sentence at hard labor under La. R.S. 14:98(E)(4)(a), sentencing of the defendant under this sentencing enhancement provision was only a possibility, but never a certainty. Thus, as a practical matter, this case was required to be tried in a six-person jury forum since there was only a possibility that the defendant could receive a sentence at hard labor. In Louisiana, a twelve-person jury is required only when the potential sentence is necessarily confinement at hard labor. La. Const. art. I, sec. 17(A); La.C.Cr.P. art. 782(A). Thus, the defendant's trial was conducted in accordance with the jury composition rules applicable to La. R.S. 14:98(E)(1)(a), wherein the actual conduct prescribed is a fourth-offense DWI, and the sentence to be imposed may be with or without hard labor.

*State v. Dahlem*, 13-0577, p. 1 (La.App. 1 Cir. 6/18/14), 148 So.3d 591, 600-01 (Kuhn, J., concurring).

*Dahlem*, 197 So.3d at 689, note 12.

Similarly, in the present case, the Bill of Information states that Ramon L. Ellender: "Did willfully and unlawfully violate R.S. 14:98 and R.S. 14:98.4, Driving While Intoxicated, Fifth Offense." As shown above, in 2015, La.R.S. 14:98.4, stated that, for a fourth or subsequent offense, "*the offender shall be fined five thousand dollars and imprisoned, **with or without hard labor**, for not less than ten years nor more than thirty years*." La.R.S. 14:98.4(A)(1) (emphasis added). Likewise in 2015, La.Const. art. 1, § 17, provided that such a case shall be tried before a six-person jury. Here, as in *Dahlem*, the State, the defense, and the trial court worked together to select a six-person jury because that is what was indicated on the Bill of Information. While Defendant was ultimately sentenced under a habitual offender statute, La.R.S. 15:529.1, "the enhanced sentence to which the evidence made defendant subject was not apparent on the face of the bill of information," which "sets the parameters and dictates the mode of trial." *See Dahlem*, 197 So.3d at 683. Accordingly, we find no merit in Defendant's second assignment of error.

### Excessiveness of Sentence

Defendant argues that his sentence is unconstitutionally excessive. Following his July 3, 2018 sentencing, Defendant timely filed a "Motion to Reconsider Sentence" on July 30, 2018, asserting only that "the sentence is excessive and based, at least partially, on evidence[] in dispute." The motion was denied without reasons the same day. The motion does not explain upon what purportedly disputed evidence Defendant thinks his sentence is based.

18

Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99);

746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Furthermore, in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writs denied*, 07-320 (La. 11/9/07), 967 So.2d 496, and 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three-factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-

433 (La. 6/25/99), 745 So.2d 1183, which established that an appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. Given the general nature of Defendant's motion to reconsider, we will review Defendant's claim as a mere excessiveness of sentence claim in light of the *Baker* factors.

### Nature of the Offense

At the time of the offense, La.R.S. 14:98(A)(1)(a) relevantly defined Defendant's offense as "operating any motor vehicle . . . when . . . [t]he operator is under the influence of alcoholic beverages." As previously noted, a defendant convicted of fourth or subsequent offense DWI faced imprisonment, "with or without hard labor, for not less than ten years nor more than thirty years." The first two years were to be imposed without benefit of probation, parole, or suspension of sentence. However, because of Defendant's prior DWI history, he ultimately fell into a category of offenders who were required to serve their sentence at hard labor without benefit of probation, parole, or suspension of sentence. The circumstances of Defendant's crime indicate a danger to the community, as he was seen hitting another vehicle while driving, and then destroying two signs on opposite sides of the road.

### Nature and Background of Defendant

Defendant was forty-six years old at the time of the instant offense, and he had been in trouble with the law for virtually the entirety of his adult life, nearly thirty years. As noted by the trial court at sentencing:

> The Court finds that the defendant has a substantial
> criminal history. In fact, Mr. Ellender has spent virtually
> all of his adult life either incarcerated or on supervised

21

probation or parole. In addition to Louisiana, he has also been arrested and/or convicted in several other states, including Texas, Mississippi, California, and Wyoming.

. . . .

By this Court's count, the defendant has been arrested for driving under the influence 12 times and convicted in at least nine of those instances. The defendant has also been arrested and/or convicted of multiple drug and other offenses, including 13 felonies and 17 misdemeanors. The Court finds that subjecting the defendant to supervision has thus far proven totally ineffective, because most of the defendant's offenses were committed while he was under probation or parole supervision.

. . . .

It is, therefore, the opinion of this Court that the defendant's pattern of repeated offenses indicates a high likelihood he will reoffend if released from incarceration, placing himself and others in the community at substantial risk of bodily harm. Because of this likelihood and in consideration of Mr. Ellender's considerable criminal history spanning his entire adult life, it is the opinion of the Court that the Defendant is in need of a lengthy custodial environment.

### *Sentences Imposed for Similar Crimes*

As noted above, the penalty range for DWI fourth offense at the time of Defendant's offense was not less than ten years nor more than thirty years. However, Defendant was adjudicated a fifth felony offender under La.R.S. 15:529.1(A)(4)(a), which held "[t]he person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life." Furthermore, La.R.S. 15:529.1(G) specifically stated "[a]ny sentence imposed under the provisions of this Section shall be at hard labor without benefit of probation or suspension of sentence."

Under La.R.S. 15:529.1(A)(4)(a) as it stood at the time of Defendant's offense, Defendant faced a sentencing range of thirty years to life. Accordingly, Defendant's fifty-year sentence represents the relative low-end of his potential sentencing range.[2] Although we did not find any prior cases wherein a fifty-year sentence was upheld on a DWI conviction, this court has previously upheld sentences of greater than twenty years without a habitual offender enhancement.

In *State v. Holloway*, 10-74 (La.App. 3 Cir. 10/6/10), 47 So.3d 56, this court upheld a twenty-two-year, unenhanced sentence for DWI fourth offense where the defendant's criminal history included dismissal of a second DWI fourth offense. This court also cited numerous cases where other Louisiana courts had upheld sentences of greater than twenty years without habitual offender enhancement: *State v. Ladner*, 619 So.2d 1144 (La.App. 1 Cir.), *writ denied*, 625 So.2d 1029 (La.1993) (twenty-year sentence for fourth offense DWI with history of misdemeanors and failed supervision); *State v. Edwards,* 591 So.2d 748 (La.App. 1 Cir. 1991), *writ denied*, 94-452 (La. 6/21/96), 675 So.2d 1072 (twenty-four-year sentence for fourth offense DWI where the defendant was actually on his eighth DWI conviction); *State v. Davis*, 588 So.2d 1234 (La.App. 1 Cir. 1991) (twenty-five-year sentence for the defendant's eighth DWI in eight years, which occurred while on probation for a DWI third offense); and *State v. Wiltcher*, 41,981 (La.App. 2 Cir. 5/9/07), 956 So.2d 769 (twenty-five-year sentence for DWI fourth offense where the defendant had a twenty-year criminal history).

As noted by this court in *Barling*, 779 So.2d 1035, the trial court has great discretion in shaping sentencing, and appellate courts should respect that discretion absent an abuse of discretion. Defendant's lengthy criminal history and

___

[2]Traditionally, a life sentence has been the functional equivalent of ninety-nine years.

long-term refusal to address his addiction issues were addressed by the trial court, which found Defendant unlikely to respond to anything short of incarceration. Given that Defendant's sentence is at the relatively low-end of his potential sentencing range, we cannot find that the trial court abused its discretion in sentencing a fifth felony offender with at least nine DWI convictions to fifty years at hard labor.

## IV.

## <u>CONCLUSION</u>

Based upon the foregoing, the evidence is sufficient to support the conviction and the sentence in this case.  Accordingly, Mr. Ellender's conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**